1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NORTHERN INSURANCE COMPANY OF        Case No: 2:09-CV-01317-JAM-JFM
     NEW YORK,
12                                        ORDER GRANTING PLAINTIFF'S
                                          MOTION FOR PARTIAL SUMMARY
13            Plaintiff,                            JUDGMENT

14        v.

15
     FIRST SPECIALTY INSURANCE
16   CORPORATION,

17            Defendants.

18

19

20        This matter comes before the Court on Plaintiff Northern

21   Insurance Company of New York's ("Northern") motion for partial

22   summary judgment pursuant to Federal Rule of Civil Procedure

23   56(c).  (Doc. # 10.)  Defendant First Specialty Insurance

24   ("First Specialty") opposes the motion.  (Doc. # 17).  For the

25   reasons set forth below, Plaintiff's motion is GRANTED.[1]

26
     _____
27
28   [1]    Because oral argument will not be of material assistance,
     the court orders this matter submitted on the briefs.  E.D. Cal.
     L.R. 78-230(h).

I. FACTUAL AND PROCEDURAL BACKGROUND

This insurance coverage dispute arises out of an underlying action in which Sunterra Corporation (now known as Diamond Resorts Corporation) (hereinafter referred to as "Sunterra") brought suit against the general contractor and architect of a time-share resort.  Pl's Mot., Doc. # 10, at 1.  Sunterra alleged that in 1996, through one of its affiliates, it entered into several contracts with Perini Building Company ("Perini") under which Perini agreed to construct Sunterra's Lake Tahoe Vacation Resort.  Id.

In 2000, Sunterra and many of its affiliates filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland.  In 2002, during the bankruptcy proceeding, Sunterra brought suit against Perini for construction defects in the Lake Tahoe Vacation Resort.  See In Re Sunterra Corporation, Sunterra Corporation v. Perini Building Company, U.S. Bankruptcy Court, District of Maryland, Case Nos. 00-5-6931-JS through 00-5-6967-JS, 00-5-7313-JS and 00-6-3717-JS.  Perini transferred venue of the action to the U.S. Bankruptcy Court for the Eastern District of California, and then to the United States District Court for the Eastern District of California.  Perini also sued a number of subcontractors on the project, including Capitol Builders

Hardware, Inc. (hereinafter "Capitol Builders"), the mutual insured of Plaintiff Northern and Defendant First Specialty.

Capitol Builders was insured by Northern from September 1, 2000 to September 1, 2001.  The Northern policy provided coverage for both residential and commercial construction projects.  Def's Opp., Doc # 17, at 3.  Upon expiration of its Northern policy, Capitol Builders obtained two commercial general liability policies from Defendant First Specialty, effective between September 1, 2001 and September 1, 2003.  Id. at 4.  The First Specialty policies contained a construction of residential property exclusion, which denied coverage for:

> Any and all claims, including but not limited to, claims for . . . "Property Damage" . . . arising out of, related to, caused by, or associated with, in whole or part, the construction of residential properties, including but not limited to, single family dwellings, duplexes, three and four family dwellings, apartment buildings or complexes, townhomes, or condominiums.

The underlying Sunterra action was filed in 2002.  First Specialty acknowledges that at issue in the underlying action was a time-share resort.  First Specialty argues that such a resort is "residential property" under the exclusion, and therefore, the carrier does not owe defense or indemnity to Capitol Builders with respect to the Sunterra action.  Plaintiff Northern, in response to a tender from Capitol Builders, defended Capitol Builders and settled all claims made against it in the Sunterra action.  Plaintiff Northern defended Capitol

Builders despite the fact that Northern's insurance policy with
Capitol Builders was effective for periods of time prior to the
Sunterra action and prior to the effective dates of the First
Specialty policies.

In the instant motion, Plaintiff Northern seeks partial
summary judgment for a declaration that First Specialty owed
Capitol Builders a defense in the underlying Sunterra action.
(Doc. # 10).

II. OPINION

A.  Legal Standard

A motion for partial summary judgment is resolved under the
same standard as a motion for summary judgment.  See California
v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  Summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of
summary judgment "is to isolate and dispose of factually
unsupported claims and defenses."  Cleotex v. Catrett, 477 U.S.
317, 323-324 (1986).

The moving party bears the initial burden of demonstrating
the absence of a genuine issue of material fact for trial.
Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248-49 (1986).

If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e) and citing <u>Celotex</u>, 477 U.S. at 323).  The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

The "interpretation of insurance contracts raise questions of law and thus are particularly amenable to summary judgment." <u>New Hampshire Ins. Co. v. R.L. Chaides Construction Co.</u>, 847 F. Supp. 1452, 1455 (N.D. Cal. 1994).

B.   <u>Plaintiff Northern's Motion for Partial Summary Judgment</u>

Plaintiff Northern is seeking a declaration that Defendant First Specialty owed a duty to defend Capitol Builders in the Sunterra action.  First Specialty argues it had no obligation to participate in the defense of Capitol Builders because the residential property exclusion precluded coverage for the Sunterra action.

Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.[2] Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 18 (Cal. 1995).  "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties."  Id. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Civ. Code, § 1636.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  Id., § 1639.  The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," controls judicial interpretation, unless "used by the parties in a technical sense or a special meaning is given to them by usage."  Id., § 1644.  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.  But language in a

_____

[2]    Here, neither party has alleged that a choice-of-law clause exists in the subject insurance policies.  Nor has either party addressed California's "governmental interest analysis" to establish that a foreign state's law should be applied.  Thus, having brought this action under federal diversity jurisdiction, the Court must apply, as the default, the substantive law of California to all claims.  Here, Capitol Builders is a California company, and the construction, events and litigation giving rise to the dispute were located in California. Moreover, both parties cite California law as controlling in their briefs.

contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."  <u>Waller</u>, <u>supra</u> 11 Cal.4th at p. 18.

Moreover, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer."  <u>MacKinnion v. Track Ins. Exch.</u>, 31 Cal. 4th 635, 648 (Cal. 2003).  An exclusionary clause must be "conspicuous, plain and clear" to be enforceable.  <u>De May v. Interinsurance Exch. of the Auto. Club of S. Cal.</u>, 32 Cal. App. 4th 1133, 1137 (Cal. 1995).  As the California Supreme Court explained, "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear . . . The burden rests on the insurer to phrase exceptions in clear and unmistakable language."  <u>State Farm Mut. Auto Ins. Co. v. Jacober</u>, 10 Cal. 3d 193, 202 (Cal. 1973).

In this case, the time-share resort at issue is beyond the scope of the First Specialty policy exclusion.  The First Specialty exclusion defines "residential properties" as "including but not limited to single family dwellings, duplexes, three and four family dwellings, apartment buildings or complexes, townhomes, or condominiums."  The examples listed generally describe places where individuals or families would move in furniture and personal belongings, receive mail, and pay

utility bills.  Specifically omitted from the list are hotels or time-share resorts, places that indicate a vacation accommodation.  The Lake Tahoe Vacation Resort does not serve as a dwelling or a home and therefore, does not fit within the plain language of the First Specialty policy exclusion. Instead, the Lake Tahoe time-share resort is part of a group of vacation resorts at which guests stay for a one-week period or trade "vacation points" to stay at another participating resort location.  Pl's Mot. at 8-9.

At a minimum, there is ambiguity in First Specialty's exclusionary policy.  Such ambiguity in an insurance contact must be construed in favor of the insured.  MacKinnion, 31 Cal. 4th at 648.  Courts have consistently held that an insurer must make limitations on coverage "conspicuous, plain and clear."  De May, 32 Cal. App. 4th at 1137.  First Specialty failed to clearly and plainly exclude time-share resorts from coverage in their policy.  Instead, First Specialty attempts to use an unclear residential work exclusion to deny a duty to defend its insured, Capitol Builders.  First Specialty has failed to provide evidence that Capitol Builders understood that liability arising from its work on a time-share resort would be excluded from coverage.  First Specialty's declaration from Mr. Milsner (Doc. # 17-5) does not establish that an understanding existed

between the parties, and does not demonstrate that trade usage justifies a broad interpretation of the policy exclusion.[3]

Given the restrictions on the use of time-share units (typically a one-week stay), the nature of the divided time-share ownership interests and the legal consequence of ambiguity in the insurance contract, the Court finds that the Lake Tahoe Vacation Resort is not a "residential property" within the meaning of First Specialty's policy exclusion. Rather, the Lake Tahoe Vacation Resort is functionally similar to a commercial hotel resort. The plain language of the policy excludes residential developments, not time-share resorts. Furthermore, the policy exclusion must be construed in favor of coverage. Accordingly, this Court finds that First Specialty had a duty to defend Capitol Builders in the Sunterra litigation.

### III. ORDER

For the above reasons, Plaintiff Northern's motion for partial summary judgment seeking a declaration that First Specialty had a duty to defend Capitol Builders in the Sunterra action is GRANTED.

IT IS SO ORDERED.

Dated: December 3, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

_____

[3] Plaintiff's evidentiary objections (Doc. # 19-5) go to issues of weight not admissibility and are therefore, overruled. However, to the extent the declaration of Mr. Milsner states an ultimate opinion, the Court strikes that portion.